IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| THIELE KAOLIN COMPANY; and KAMIN, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:10-CV-218 (MTT) |
| BNSF RAILWAY COMPANY, | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | |
| UPM-KYMMENE, INC., | ) ) | |
| Third-Party Defendant | ) ) | |

## ORDER

This matter is before the Court on BNSF Railway Company's Motion for Reconsideration of the Court's Order Granting Third-Party Defendant's Motion to Dismiss (Doc. 33) (the "Motion"). For the following reasons, the Motion is denied.

### I.     DISCUSSION

BNSF argues that the Court, in its Order (Doc. 32) dismissing UPM-Kymmene, Inc. from the litigation for lack of personal jurisdiction, made at least three erroneous factual findings. Rectifying these three errors would require the Court to change its ruling and deny the Motion to Dismiss.

**A.     "UPM Blandin Paper Company"**

First, BNSF cites as error this Court's reference to Blandin Paper Company, the actual customer of the Plaintiffs, as "UPM Blandin Paper Company." This contention is frivolous. BNSF states that there is no legal entity known as "UPM Blandin Paper

Company"—which is how the Court referred to Blandin one time in its Order. What BNSF fails to specify, however, is the significance of this "error;" in fact, it has no significance. First, there is some confusion on the part of all parties as to how to refer to Blandin. Indeed, throughout this litigation Blandin has been referred to as "Blandin Paper Company," "UPM Blandin Paper Company," "UPM Blandin," and "UPM-Blandin." *See* LaMantia Dep. 1 at 47:9; LaMantia Dep. 2 at 57:13, 125:5, 127:25, 136:14; and Yates Dep. at Ex. 3. Second, even if BNSF disputes Blandin's proper legal name, BNSF still acknowledges the existence of an entity known as "Blandin," which, like the UPM Blandin Paper Company of this Court's Order, is a wholly owned subsidiary of UPM-Kymmene Investment Holding Company and an affiliate of UPM-Kymmene, Inc. The point is that Blandin is a separate, although related, entity.

**B.     Transportation Arrangements**

Second BNSF makes a rather confusing argument that Blandin did not—could not, in fact—arrange for the transportation of clay from Sandersville, Georgia, to its own paper mill in Grand Rapids, Minnesota. BNSF's main argument is that "UPM's reply brief continues to acknowledge that it 'does make transportation arrangements for the kaolin clay purchased in Georgia.'" Def.'s Br., p. 2. This is not inconsistent with this Court's ruling. In fact, it is even acknowledged in the Order. UPM does make arrangements on behalf of Blandin; it negotiates freight rates. However, UPM, through the testimony of Angelo LaMantia, has reiterated time and time again that UPM only negotiated freight rates; Blandin made the day-to-day arrangements for the transportation of kaolin. BNSF has presented no evidence to show this to be an erroneous finding.

## C. The Plaintiffs' Actual Customer

Finally, BNSF argues that the Court erred in ruling that Blandin purchased kaolin from the Plaintiffs because there is a conflict in the evidence that should be resolved in favor of BNSF. In other words, because of the conflict in the evidence, the Court should have ruled that UPM purchased kaolin from the Plaintiffs for the purposes of the Motion to Dismiss. BNSF, here, though, is merely trying to use the confusion, previously mentioned, over Blandin's name (e.g., "Blandin" or "UPM Blandin") to argue that there is confusion as to the true customer of the Plaintiffs. While the Plaintiffs may have been confused as to which UPM entity they were dealing with, and while for the purposes of day-to-day operations it was not essential for the Plaintiffs to distinguish between UPM and Blandin, the evidence is clear that Blandin, not UPM, purchased kaolin from the Plaintiffs.

BNSF, in support of its position, cites the deposition testimony of one of the Plaintiffs' Rule 30(b)(6) witnesses and claims this testimony is somehow "binding" on the Court. While this witness did testify that UPM was its customer, it is clear that the Plaintiffs' witnesses were often confused regarding the identity of UPM and Blandin and, in any event, did not particularly care which was which. For instance, John Michael Sheppard testified on behalf of Kamin LLC, "Now, on that report it's going to say Blandin. But to us, UPM/Blandin is the way we knew the customer." Sheppard Dep. 15:8-10. Later, he testified, "UPM, Blandin, I mean, to us is the same thing. . . [W]hen we see Blandin as a customer, we see UPM/Blandin. . . As far as saying to differentiate UPM and Blandin, we view them as the same person." Sheppard Dep. 19:13-20. Throughout Mr.

Sheppard's deposition testimony, in fact, Mr. Sheppard almost always referred to Blandin as "UPM/Blandin."

Martha Yates, Thiele's Rule 30(b)(6) representative, exhibited in her deposition testimony similar confusion. While she did testify that the purchases were made by UPM, she also uses UPM and Blandin interchangeably. For instance, she testified, "UPM, Blandin makes their own contracts for transportation." Yates Dep. 18:12-13. In addition, attached to Ms. Yates's deposition at Exhibits 2, 3, and 4, are bills of lading for purchases of kaolin. The bills of lading state that the kaolin is consigned to "UPM-Blandin" at an address in Grand Rapids, Minnesota.

On the other hand, the testimony of UPM's Rule 30(b)(6) representative clearly establishes that UPM did not purchase kaolin from the Plaintiffs and that Blandin did. For example, when asked, "To your knowledge, does UPM purchase kaolin clay in any location," Angelo LaMantia, UPM's Rule 30(b)(6) representative, answered, "No. Does UPM—no, UPM does not purchase any clay." LaMantia Dep. 9:7-10. When asked if Blandin purchased Kaolin, however, LaMantia answered, "Yes." LaMantia Dep. 10:1-6. In light of this testimony, any confusion caused by the testimony of the Plaintiffs' Rule 30(b)(6) representatives is resolved. Blandin purchased the kaolin. UPM did not.

## II. CONCLUSION

The Court did not err in its factual determinations.  Therefore, there is no reason to reconsider its Order.  The Motion (Doc. 33) is **DENIED**.

**SO ORDERED**, this 29th day of March, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

jch